POSTED ON WEBSITE

FILED
MAY 15 2014
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re

Jerry Harry Kutumian,

    Debtor.

Case No. 13-14675-B-7

DC No. KDG-2

### MEMORANDUM DECISION REGARDING DEBTOR'S MOTION FOR DAMAGES BASED ON VIOLATION OF THE AUTOMATIC STAY AND SANCTIONS FOR CONTEMPT

Connie M. Parker, Esq., of Klein, DeNatale, Goldner, et al., LLP, appeared on behalf of the debtor Jerry Harry Kutumian.

George A. Gonzalez, Esq., appeared on behalf of respondents Mitchell S. Golub, Esq. and the Law Offices of Golub & Associates, PLC.

    Before the court is a motion filed by the debtor Jerry Harry Kutumian (the "Debtor") seeking damages under 11 U.S.C. § 362(k)(1)[1] and civil contempt sanctions under § 105(a) against attorney Mitchell S. Golub, Esq., and the Law Offices of Golub & Associates, PLC (collectively "Golub") for their willful violation of the automatic stay (the "Motion"). The court has already determined that a willful violation occurred and it has since been corrected. Rather, this dispute revolves around the appropriate amount of damages, specifically attorney's fees and costs, that the Debtor can recover as a result of the violation. The Debtor requests $4,366 in attorney's fees and $75.05 in costs. Golub contends that the award should not exceed $1,000. For the reasons set forth below, the court will award the Debtor his actual damages under § 362(k)(1) in the amount of $3,408.55, representing attorney's fees

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated *after* October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) of 2005, Pub. L. No. 109-8, 119 Stat. 23.

and costs incurred prior to termination of the stay violation. The Debtor's request for an award of additional fees as a contempt sanction under § 105(a) will be denied.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c). The court has jurisdiction over this matter under 28 U.S.C. § 1334, 11 U.S.C. §§ 105 and 362, and General Order Nos. 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

**Background and Findings of Fact.**

The Debtor, an individual, is a building contractor who was involved in the construction and sale of residences located in a planned development known as Summit Ranch. Prior to his bankruptcy, the Debtor, along with other entities, had been sued in state court by various Summit Ranch homeowners for alleged construction defects (the "First Civil Action").[2] The plaintiffs in the First Civil Action were represented by Golub. When this chapter 7 bankruptcy commenced on July 3, 2013, the First Civil Action was stayed. In his schedules, the Debtor listed the homeowners from the First Civil Action as creditors, using Golub's address for notice. Thus, Golub received notice of the bankruptcy case, the meeting of creditors, and the deadlines for taking certain actions against the Debtor.

Not only did Golub know of the Debtor's bankruptcy, but Golub even participated in some of the bankruptcy proceedings. On August 9, 2013, Golub filed a notice of appearance and request for special notice on behalf of the homeowners. Three days later, Golub appeared at the meeting of creditors and questioned the Debtor regarding potential insurance coverage for the Summit Ranch development.

---

[2] The First Civil Action included causes of action for strict liability, negligence, nuisance, breach of warranty, negligent failure to disclose misrepresentation, and negligent infliction of emotional distress.

Golub also filed an adversary proceeding against the Debtor on October 11 seeking to deny his discharge under § 727 or to alternatively except the homeowners' claims from discharge under § 523 (the "Adversary Proceeding"). Lastly, on October 24, Golub filed an objection to the chapter 7 trustee's report of no distribution and, on December 4, appeared at the hearing on that matter.

On December 31, 2013, while this bankruptcy case was still pending, before entry of the Debtor's discharge,[3] and while the automatic stay was still in effect, Golub filed a second construction defect action against the Debtor and other entities in state court on behalf of seventeen different Summit Ranch homeowners (the "Second Civil Action"). The complaint in the Second Civil Action involved new plaintiffs but was based on many of the same causes of action alleged in the First Civil Action. Golub was aware of the automatic stay when it filed the Second Civil Action but believed (erroneously) that the claims pleaded in the Second Civil Action did not arise until after commencement of the Debtor's bankruptcy.[4] While the Debtor was named as a defendant in the Second Civil Action, there is no evidence to suggest that the Debtor was ever served with the summons or complaint.

On January 3, 2014, the Debtor's counsel, Connie Parker ("Parker"), learned of the Second Civil Action and immediately sent a demand letter to attorney Mitchell Golub reminding him that the Second Civil Action violated the automatic stay and requesting a dismissal of the Debtor not later than January 10. Golub apparently

---

[3] Golub's adversary proceeding delayed the entry of a discharge in this case. The objection to discharge claim for relief was dismissed with prejudice on April 11, 2014, and the Debtor's general discharge was entered on April 14, 2014. The automatic stay terminated as to the Debtor at that time and was replaced by the discharge injunction.

[4] The plaintiffs in the Second Civil Action all purchased their homes before commencement of the bankruptcy. However, Golub's first argument in opposition to the Motion was based on Golub's contention that the various construction defects underlying the Second Civil Action were not *discovered* until after commencement of the bankruptcy, that they were therefore "postpetition claims," and that the automatic stay did not apply. The court rejected Golub's "postpetition claim" argument for reasons stated on the record at the hearing, so it will not be discussed here.

received the letter around January 9 but made no effort to respond to Parker.[5] While Parker awaited Golub's response, she periodically checked the state court's docket to see if the status of the Second Civil Action had changed. On January 21, almost three weeks after sending the letter to Golub, and still having received no response or seen any change in the status of the Second Civil Action, Parker began preparing the Motion. It was completed the next day, but was not actually filed and served until January 28.

Meanwhile, in the Adversary Proceeding, Parker filed a status conference statement on January 24, which advised the court that Golub had filed the Second Civil Action against the Debtor in violation of the automatic stay. The statement also declared Parker's intent to file the Motion shortly thereafter. Golub's responsive status conference statement, filed three days later, announced for the first time that Golub was in the process of dismissing the Debtor from the Second Civil Action.

On or about that same day, January 27, Golub submitted a request to the state court for dismissal of the Debtor from the Second Civil Action. The next day, Golub called Parker and informed her that the request for dismissal had been transmitted to the state court and that Golub was simply waiting for the state court to return a conformed copy. However, the record does not show that Golub provided Parker with a copy of the dismissal request, and the state court did not enter the dismissal on its docket until January 31, 2014. At that point, Golub's violation of the automatic stay terminated, and there was nothing else Golub needed to do to correct the error.

After finally receiving a call from Golub regarding its intent to dismiss the Second Civil Action, but having not yet received a copy of the dismissal request and

---

[5] At that time, both attorneys Mitchell Golub and George Gonzalez were undergoing personal and family issues that "prevented them from immediately addressing [Parker's] demand," and Golub's response simply states that these issues occurred in "early January." Opp'n to Debtor's Mot. for Order for Contempt 6:4–8, Feb. 26, 2014, ECF No. 50. It does not address the exact timing of these issues in relationship to Parker's demand letter, and it does not adequately explain why Parker received no response once the attorneys were able to return to their cases.

not seeing that the Second Civil Action was actually dismissed, Parker proceeded to file the Motion with this court on January 28. The Motion prays for $4,366 in attorney's fees and $75.05 in costs as part of either the damages recoverable under § 362(k)(1) and/or an award of contempt sanctions under § 105(a).[6]

In support of the Motion, Parker attached copies of her billing records which revealed seventeen time entries for 14.8 hours of work billed at $295 an hour. First, seven billing entries, totaling only 1.8 hours and $531 in fees, cover a range of Parker's tasks, including drafting the demand letter, communicating with the Debtor about the Second Civil Action, reviewing the Second Civil Action's complaint and docket, and drafting a notice of the automatic stay to be filed in the Second Civil Action. Then, there are eight entries that represent the bulk of the requested attorney's fees—9.5 hours of work resulting in fees of $2,802.50—relating to preparation of the Motion on January 21 and 22. Lastly, Parker includes two "future" time entries that total 3.5 hours and $1,032.50 in fees. They represent the anticipated fees for reviewing Golub's opposition to the Motion, drafting the responsive reply brief, and appearing at the hearing on the Motion.

**Discussion and Conclusions of Law.**

<u>Willful Violation of the Automatic Stay.</u> There is no question that Golub's filing of the Second Civil Action violated the automatic stay. *See* § 362(a)(1) (staying "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title"); *see also supra* note 4 (regarding Golub's "postpetition claim" argument).

Further, there is no question that the stay violation was a willful act. "A

---

[6] Since, at the time of the Motion's filing, the stay violation had not yet been formally remedied, the Debtor also requested in the Motion that Golub be sanctioned $100 a day until the Debtor was dismissed from the Second Civil Action. However, by the March 12 hearing on the Motion, the Debtor had already been dismissed. As a result, this issue is moot, and the court has no need to address this request.

5

willful violation is satisfied if a party knew of the automatic stay, and its actions in violation of the stay were intentional." *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002). As to the first element, Golub knew of the automatic stay, which is evidenced by its notice of and participation in the bankruptcy case. *See Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003) (noting that "a party with knowledge of bankruptcy proceedings is charged with knowledge of the automatic stay" for § 362(k)(1) purposes); *Ozenne v. Bendon (In re Ozenne)*, 337 B.R. 214, 220 (9th Cir. BAP 2006) ("Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the automatic stay."). As to the second element, the preparation and filing of the Second Civil Action was totally within Golub's control and can only be characterized as an intentional, voluntary act.

Actual Damages under § 362(k)(1). Because Golub has willfully violated the automatic stay, the court now turns to the issue of the Debtor's damages. Under § 362(k)(1), "an individual injured by any willful violation of [the automatic stay] shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." The language of the statute gives the court little discretion with regard to awarding some amount of damages. "The words 'shall recover' indicate that Congress intended that the award of actual damages, costs and attorney's fees be mandatory upon a finding of a willful violation of the stay." *Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 589 (9th Cir. BAP 1995).

Here, the Debtor has not offered any evidence of, nor prayed for, any damages arising out of the stay violation other than his attorney's fees and costs. However, the parties disagree on the amount of attorney's fees that can be properly awarded. The Debtor prays for $4,366 in fees and $75.05 in costs, while Golub urges that the award not exceed $1,000. However, neither number represents the appropriate result.

The *Sternberg* Limitation. The issue of what attorney's fees are generally appropriate in a § 362(k)(1) award was addressed by the Ninth Circuit in *Sternberg v.*

*Johnston*, 595 F.3d 397 (2010). Prior to *Sternberg*, the BAP had permitted individual debtors to recover all "[a]ttorneys' fees incurred as a result of a violation of the automatic stay," including "the attorney's fees and costs incurred in prosecuting an adversary proceeding seeking damages arising from a violation of the automatic stay," as a part of their "actual damages" under § 362(k)(1). *Havelock v. Taxel (In re Pace)*, 159 B.R. 890, 900–01 (9th Cir. BAP 1993), *vacated in part on other grounds*, 67 F.3d 187 (9th Cir. 1995). However, the Ninth Circuit in *Sternberg* rejected that result based on the "American Rule" regarding the recovery of attorney's fees. It significantly limited the remedy available under § 362(k)(1), holding that the award of "actual damages" can include "only those attorney fees related to enforcing the automatic stay and remedying the stay violation," but not the fees incurred in prosecuting the damage action itself. 595 F.3d at 940. "Without a doubt, Congress intended § 362(k)(1) to permit [only] recovery as damages of fees incurred to prevent violation of the automatic stay." *Id.* at 946.

    The distinction between those attorney's fees incurred to enforce the stay and remedy the stay violation and those incurred to prosecute a § 362(k)(1) damages claim is not always a clear line. *See, e.g., Am.'s Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard)*, --- F.3d ---, No. 12-60052, 2014 WL 1465698, at *4–10 (9th Cir. Apr. 16, 2014) (Wallace, J., dissenting) (disagreeing with majority over whether the debtor could recover attorney's fees incurred in defending the appeal of a finding of a stay violation). Yet, in an attempt to simplify the analysis, the Ninth Circuit in *Sternberg* has given us a "bright line" which is applicable here: "Once the [stay] violation has ended, any fees the debtor incurs after that point in pursuit of a damage award would not be to compensate for 'actual damages' under § 362(k)(1)." 595 F.3d at 947. *But see Schwartz-Tallard*, 2014 WL 1465698, at *7 (Wallace, J., dissenting) (noting that majority did not follow *Sternberg*'s instruction).

    As a result, the court must determine when Golub's stay violation actually

7

terminated because, under *Sternberg*, that is the operative date after which the Debtor's right to recover attorney's fees under § 362(k)(1) also terminated. Here, Golub submitted its request for dismissal to the state court on or about January 27, 2014, but the state court did not actually enter the dismissal until January 31. Thus, the stay violation did not cease until January 31, 2014, and the Debtor should be entitled to recover his reasonable attorney's fees incurred up until that date.

Golub argues for a further reduction of the attorney's fees, contending that some of Parker's work between January 3 and 22 related solely to prosecution of the § 362(k)(1) damages action, which cannot be counted as "damages" under *Sternberg*. Indeed, eight billing entries from January 21 to 22, which total $2,802.50, relate to preparation of the Motion and could, as Golub argues, be considered "pursuit of a damage award." *Sternberg*, 595 F.3d at 947. The court disagrees. As the facts of this case illustrate, the legal services necessary to remedy a stay violation can often overlap those necessary to recover damages, and until the stay violation terminates, those legal services can fall into both categories.

Golub disregards the Ninth Circuit's instruction, recited above, that "[o]nce the [stay] violation has ended, any fees the debtor incurs after that point in pursuit of a damage award would not be to compensate for 'actual damages' under § 362(k)(1)." *Id.* By inverse, before the stay violation has ended, the attorney's fees incurred by the debtor, even if somewhat related to the "pursuit of a damage award," may also be categorized as part of the actual damages under § 362(k)(1) if they are reasonably related to correcting the violation.

As the Ninth Circuit noted, the actual damages awarded under § 362(k)(1) are intended to compensate for the "injury resulting from the stay violation itself." *Id.* As long as the stay violation continues, the injury to the debtor continues, and the reasonable costs for bringing an end to the stay violation continue to be part of that injury. How a debtor seeks to remedy the stay violation will change depending on the

circumstances. Sometimes, a simple demand letter or phone call to the party violating the stay is sufficient to convince that party to end its stay violation. That remedy was tried but did not work here. At other times, the formal request for damages in a motion or complaint filed with the court becomes a necessary tool of persuasion against the violating party. Certainly, a motion for compensatory damages would have more "teeth" than the seemingly empty threat to seek damages in a demand letter, especially when the offending party has not otherwise responded to the letter.

Such is the case here. After waiting nineteen days with no response from Golub, Parker reasonably concluded that the only tool the Debtor had to force Golub's response and gain a dismissal from the Second Civil Action was to pursue the Motion. Even though the Motion requests damages under § 362(k)(1), the very existence of the Motion was also instrumental in bringing an end to the stay violation. The court notes that the Motion not only prays for damages but also requests the imposition of daily sanctions until Golub actually complied with the automatic stay. Golub did not begin the process of curing the stay violation until after Parker mentioned the forthcoming Motion in the Adversary Proceeding's status conference statement on January 24. On these facts, the court is not persuaded that the fees incurred to prepare and file the Motion were not properly "attorney fees related to enforcing the automatic stay and remedying the stay violation." *Id.* at 940.

Failure to Mitigate. Additionally, Golub argues that Parker failed to mitigate the damages by generating excessive fees. The attorney's fees requested under § 362(k)(1) must be reasonable. *See Eskanos & Adler, P.C. v. Roman (In re Roman),* 283 B.R. 1, 11 (9th Cir. BAP 2002) (endorsing use of § 330 principles as guide for determining attorney's fees in § 362(k)(1) context). "Generally, in determining the appropriate amount of attorneys' fees to award as a sanction, the court looks to two factors: (1) what expenses or costs resulted from the violation and (2) what portion of those costs was reasonable, as opposed to costs that could have been mitigated." *Id.*

9

at 12.

Here, Golub contends that Parker unnecessarily moved forward with preparation of the Motion after sending the demand letter on January 3, rather than following up with Golub. Indeed, Golub complains that Parker only sent one letter and then failed to "request an update on the dismissal." Opp'n to Debtor's Mot. for Order for Contempt 8:19–28, Feb. 26, 2014, ECF No. 50. However, this argument necessarily implies that Parker had some continuing duty to "follow up" and remind Golub of its stay violation. Golub's argument fails to acknowledge that it had an affirmative duty to remedy the stay violation. *See Eskanos*, 309 F.3d at 1214–15; *see also Dyer*, 322 F.3d at 1192; *cf. Abrams v. Sw. Leasing & Rental Inc. (In re Abrams)*, 127 B.R. 239, 244 (9th Cir. BAP 1991) (concluding that creditors' continued repossession of debtors' car became willful stay violation when they "failed to take any reasonable steps to remedy their violation upon learning of the debtors' bankruptcy"). Golub could have easily responded to Parker with a simple phone call, or perhaps even a letter, immediately after receiving her demand. If Golub's two responsible attorneys were unable to respond immediately, one of them certainly could have responded to Parker within the three weeks that followed. It was not entirely up to Parker to initiate the contact and pursue the remedy.

Parker's actions were not unreasonable given Golub's failure to respond to the demand letter or otherwise communicate with Parker. Even if Golub did not receive the demand letter until January 9, six days after it was mailed out, Golub made no immediate attempt to contact Parker, even informally, about dismissing the Debtor from the Second Civil Action. Parker waited nineteen days after mailing the demand letter before she even started to work on the Motion. Golub waited until January 27 to first inform Parker, through a pleading it filed in another action, that a request for dismissal would be forthcoming. Even then, Parker had nothing to verify that the request for dismissal had actually been prepared and sent to the state court. By that

10

time, it was simply too late; Parker had completed the Motion and was ready to file it. It is disingenuous for Golub to suggest that Parker acted improperly by filing the Motion shortly after learning, informally and for the first time, that Golub now intended to do what it should have already done.

For these reasons, the court will award the Debtor his actual damages under § 362(k)(1) in the amount of $3,408.55, which represents $3,333.50 in attorney's fees and $75.05 in costs incurred prior to termination of the stay violation. The Debtor's request for additional attorney's fees to review Golub's opposition, draft the reply, and appear at the hearing—tasks that did not occur until after the stay violation ended—cannot be awarded under § 362(k)(1) in accordance with *Sternberg*.

Civil Contempt Sanctions under § 105(a). The court now turns to the more difficult part of the Motion, the Debtor's request for attorney's fees incurred after January 31, i.e., when the stay violation terminated. As discussed above, attorney's fees incurred after the Debtor was dismissed from the Second Civil Action cannot be awarded under § 362(k)(1) and *Sternberg*. However, the Debtor argues that these fees are recoverable as a civil contempt sanction under § 105(a).

The civil contempt remedy is not based on a specific statutory predicate like the damages remedy provided in § 362(k)(1). In the absence of a statutory basis for awarding additional attorney's fees to the Debtor, he is essentially asking the court to exercise its general equitable powers under § 105(a), which states, in pertinent part, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title . . . ." In the Ninth Circuit, the civil contempt remedy has been generally accepted as an exercise of the bankruptcy court's equitable power under § 105(a). *See Dyer*, 322 F.3d at 1189–90 & n.13 (discussing history of the civil contempt remedy within the Ninth Circuit).

Further, it has long been accepted in the Ninth Circuit that civil contempt sanctions are available as a remedy for a violation of the automatic stay. *See Cal.*

11

*Emp't Dev. Dep't v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1152 (9th Cir. 1996); *Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 193 (9th Cir. 1995); *United States v. Arkison (In re Cascade Roads, Inc.)*, 34 F.3d 756, 767 (9th Cir. 1994); *Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 620 (9th Cir. 1993). Section 105(a) allows the entity who proves a willful stay violation to recover "sanctions associated with civil contempt—that is, compensatory damages, attorney fees, and the offending creditor's compliance." *Dyer*, 322 F.3d at 1193 (discharge violation case). "[W]hile an award of damages under section [362(k)(1)] is mandatory, an award of damages under section 105(a) is discretionary." *Pace*, 67 F.3d at 193. Additionally, as distinguished from a § 362(k)(1) award, which is limited by *Sternberg*, "a damages award under § 105(a) for a willful stay violation may appropriately include attorneys' fees and costs incurred in pursuing damages for the violation," i.e., fees incurred after the termination of the stay violation. *Rediger Inv. Corp. v. H Granados Commc'ns, Inc. (In re H Granados Commc'ns, Inc.)*, 503 B.R. 726, 735 (9th Cir. BAP 2013).

The Debtor contends that the cited case authority unquestionably supports his request for recovery of the attorney's fees incurred after the stay violation ended. However, the injured parties in the cited cases were not "individuals" (i.e., natural persons) entitled to relief under § 362(k)(1).[7] The courts had to rely on § 105(a)'s civil contempt authority to create a remedy for those non-individuals that had no other available remedy. *See Del Mission*, 98 F.3d at 1152 (trustee); *Pace*, 67 F.3d at 193 (trustee); *Cascade Roads*, 34 F.3d at 766–67 (corporate debtor); *Goodman*, 991 F.2d at 619–20 (corporate debtor); *H Granados Commc'ns*, 503 B.R. at 734 (corporate debtor); *cf. Ramirez*, 183 B.R. at 589 (treating individuals' motion for contempt as a request for damages under

---

[7] The Debtor has not cited a case where an injured individual was awarded contempt sanctions under § 105(a).

12

§ 362(k)(1).

This case though involves an individual, which makes § 362(k)(1) the immediately applicable authority, and which also makes the above cited cases distinguishable. Because those cases involved non-individuals, the courts never had to address the individual debtor's right to recover damages under both §§ 362(k)(1) and 105(a). Thus, those cases are not as applicable here as the Debtor suggests they might be.

Nevertheless, the Ninth Circuit in *Sternberg*, after limiting the recovery of "damages" under § 362(k)(1), suggested, in a footnote, that additional attorney's fees may still be awarded as civil contempt sanctions:

> The attorneys fee award against Sternberg was based on the authority of this statute [§ 362(k)(1)]. The bankruptcy court did not find Sternberg or anyone else to be in civil contempt for violating the automatic stay, nor did it impose any sanctions under its inherent civil contempt authority. As this opinion does not consider the civil contempt authority of the court, it does not limit the availability of contempt sanctions, including attorney fees, for violation of the automatic stay, where otherwise appropriate.

595 F.3d at 946 n.3 (citation omitted). *Sternberg*, however, was decided before the U.S. Supreme Court's recent decision in *Law v. Siegel*, 134 S. Ct. 1188 (2014), which directly addresses the scope and application of § 105(a). In *Law*, the Supreme Court significantly curtailed the bankruptcy courts' ability to utilize § 105(a) as a basis for creating new remedies that are not otherwise available under the Bankruptcy Code and, as applicable here, for circumventing the limitations of those remedies that are in the Code.

In *Law*, the Supreme Court addressed the bankruptcy court's use of § 105(a) to remedy an egregious case of bad faith conduct by the debtor in litigation of an adversary proceeding. *See id.* at 1194–95. The Court acknowledged that, in addition to the statutory power under § 105(a) to carry out the provisions of the Code, the bankruptcy court "may also possess 'inherent power . . . to sanction abusive litigation

13

practices. *Id.* at 1194 (quoting *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375–76 (2007)). The Court then admonished, "But in exercising those statutory and inherent powers, a bankruptcy court may not contravene specific statutory provisions . . . . Section 105(a) confers authority to 'carry' out the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits." *Id.*

In the proceeding below, the Ninth Circuit had followed the precedent established in *Latman v. Burdette (In re Latman)*, 366 F.3d 774 (9th Cir. 2004), a decision now abrogated by *Law*. *See Law v. Siegel*, 435 F. App'x 697, 698 (9th Cir. 2011). The Ninth Circuit applied § 105(a) to bestow upon the bankruptcy court the general equitable power to surcharge the debtor's $75,000 homestead exemption to compensate the bankruptcy estate for over $500,000 in administrative expenses resulting from the debtor's bad faith conduct. *See id.* In effect, this amounted to disallowance of the debtor's homestead exemption and use of that exemption to pay administrative expenses.

The Supreme Court, however, rejected all of the arguments for such a remedy, finding that surcharging an exemption contravened provisions in the Bankruptcy Code and that there was also no statutory basis in the Code for allowing this equitable surcharge. *See id.* at 1195–96. The Court noted that the surcharge conflicted specifically with two subsections of § 522: § 522(b), which allows a debtor to exempt property in the first place, and § 522(k), which expressly limits the use of exempt property to pay for administrative expenses. *See id.* at 1195. And § 522, with its "carefully calibrated exceptions and limitations," did "not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate," such as the debtor's bad faith conduct. *Id.* at 1196. Further, outside of § 522, the Court concluded that the Code did not admit "a general, equitable power in bankruptcy courts to deny exemptions based on a debtor's bad-faith conduct." *Id.* at 1197. Thus, *Law* demands that the bankruptcy courts re-examine the traditional

14

theories and assumptions upon which they have previously utilized § 105(a).

Returning now to the case before this court, when an individual is injured by a violation of the automatic stay, that individual's ability to recover attorney's fees as a contempt sanction under § 105(a) becomes a troubling issue due to the application of § 362(k)(1) as limited by *Sternberg*. As *Law* cautions, "[§] 105(a) confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits." *Id.* at 1194. This presents the court with the following question: Does the court's civil contempt authority under § 105(a) "contravene[ ] a specific provision of the Code"—namely, § 362(k)(1)—when it is used to allow an individual to recover the attorney's fees which *Sternberg* says are otherwise unavailable under the Bankruptcy Code? *Id.* at 1195. If the answer is yes, then pursuant to *Law*, an individual's right to recover attorney's fees as damages is strictly limited to the fees allowed by § 362(k)(1) and *Sternberg*. If the answer is no, then an individual can circumvent *Sternberg*'s limitation and recover attorney's fees incurred in pursuing damages under § 105(a).

To answer this question, the court first looks to the history of how Congress, as well as the courts, sought to help those injured by violations of the automatic stay. Prior to the 2005 BAPCPA amendments, § 362(k)(1) had been designated § 362(h). *See* BAPCPA, Pub. L. No. 109-8, §§ 305(1)(B), 441(1)(A), 119 Stat. at 79, 114. And § 362(h), in turn, had been added to the Bankruptcy Code in 1984, creating a private remedy for individuals injured by a stay violation. *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, § 304, 98 Stat. 333, 352. "Before the enactment of § 362(h) in 1984, sanctions for violations of the automatic stay were pursued in a civil contempt proceeding pursuant to the court's discretionary power under § 105(a)." *Roman*, 283 B.R. at 14; *see, e.g., Superior Propane v. Zartun (In re Zartun)*, 30 B.R. 543, 546 (9th Cir. BAP 1983) (citing additional cases); *Fid. Mortg. Investors v. Camelia Builders, Inc. (In re Fid. Mortg. Investors)*, 550 F.2d 47, 50 (2d

15

Cir. 1976) (Bankruptcy Act case). Yet, "[t]he precise reason for the enactment of [§ 362(h)] is not clear," *Wagner v. Ivory (In re Wagner)*, 74 B.R. 898, 902 (Bankr. E.D. Penn. 1987), so it is unknown whether § 362(h)'s enactment was intended to limit, in any way, the contempt remedy relied upon by courts prior to 1984, at least with regards to individuals injured by a stay violation.

Some courts have commented that "creation of an express right of action [in § 362(h)] responded to widespread criticism of the need to rely on the contempt power to remedy violations of § 362." *Walls*, 276 F.3d at 509 (citing *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422 (6th Cir. 2000); Jeffrey A. Stoops, *Monetary Awards to the Debtor for Violations of the Automatic Stay*, 11 Fla. St. U.L. Rev. 423, 439 (1983)). Apparently, prior to 1984, "[c]reditors argued that it was not possible to be in 'contempt' of a rule of procedure or a statute as opposed to an order of a court." *United States v. Harchar*, 331 B.R. 720, 730 (N.D. Ohio 2005); *accord Peterson v. Wells Fargo Bank, N.A.*, No. CV-99-6389 REC/SMS, 2000 WL 1225788, at *5 n.1 (E.D. Cal. Aug. 17, 2000) (providing that "use of the court's contempt power to remedy a violation of § 362 was criticized [because] [a] contempt proceeding under § 362 is for a violation of the statute itself"). *But see Dyer*, 322 F.3d at 1191 (providing that "the automatic stay qualifies as a specific and definite order" such that contempt sanctions can be imposed for stay violation). Thus, one could conclude that § 362(h)'s introduction of a new statutory remedy called into question the continuing viability of § 105(a) as an independent way to address essentially the same issue.

The scant relevant legislative history, however, suggests that § 362(h) was introduced to provide "an additional right of individual debtors and [was] not intended to foreclose recovery under already existing remedies." 130 Cong. Rec. H1942 (daily ed. Mar. 26, 1984) (statement of Rep. Rodino). Relying on this comment in the congressional record, some courts have interpreted § 362(h) to mean that "Congress did not intend to abrogate the right to seek civil contempt, the remedy

traditionally available to aggrieved debtors for violations of the automatic stay." *Wagner v. Ivory (In re Wagner)*, 74 B.R. 898, 903 (Bankr. E.D. Penn. 1987); *accord Ga. Scale Co. v. Toledo Scale Corp. (In re Ga. Scale Co.)*, 134 B.R. 69, 72–73 (Bankr. S.D. Ga. 1991). Rather, § 362(h)'s introduction "was meant to supplement, not replace, the civil contempt remedy." *Wagner*, 74 B.R. at 902; *In re Sharon*, 200 B.R. 181, 200 (Bankr. S.D. Ohio 1996). "The enactment of [§ 362(h)] granted bankruptcy courts an independent statutory basis, apart from their contempt power, to order sanctions against violators of automatic stays." *Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1104 (2d Cir. 1990).

Notwithstanding that the courts have traditionally recognized two available remedies for a stay violation (i.e., § 362(k)(1) damages and § 105(a) contempt sanctions), the court must now reevaluate those remedies in light of *Law*. In other words, this court must consider whether the contempt remedy that may have previously been available to the individual can ever go beyond what is recoverable under § 362(k)(1), something that has not been addressed by courts.[8]

Contempt sanctions are issued pursuant to § 105(a). *See Dyer*, 322 F.3d at 1189–90. While § 105(a) may have far-reaching application, "[i]t is hornbook law that § 105(a) does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." *Law*, 134 S. Ct. at 1194 (internal quotation marks omitted) (citation omitted). "That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere." *Id.* Thus, "it is generally agreed that § 105 is not a roving commission to do equity or to do anything inconsistent with the Bankruptcy

---

[8] This discussion is not intended to address whether *Law* affects the established Ninth Circuit case law, cited above, that permits a non-individual injured by a stay violation to recover civil contempt sanctions under § 105(a), since § 362(k)(1) is not applicable in those cases.

17

Code." *Yadidi v. Herzlich (In re Yadidi)*, 274 B.R. 843, 848 (9th Cir. BAP 2002).

In this case, the "specific prohibition" lies in § 362(k)(1), as narrowly interpreted by *Sternberg*. Section 362(k)(1) sets forth a comprehensive set of remedies for individuals injured by a willful stay violation, expressly including both mandatory remedies (i.e., "actual damages, including costs and attorneys' fees") and discretionary remedies (i.e., "punitive damages"). And, under *Sternberg*, the (mandatory) attorney's fees included in the damages are limited to those fees incurred before termination of the stay violation. *See* 595 F.3d at 947. Anything that falls outside of what must or may be awarded under § 362(k)(1) would clearly be precluded from recovery, such as attorney's fees incurred in pursuing the damages award.

Although § 362(k)(1) and § 105(a) may appear to offer two distinct remedies, the limitations of § 362(k)(1) must nevertheless guide what can be awarded under § 105(a). This is because "the language of § 105(a) authorizes only those remedies 'necessary' to enforce the bankruptcy code." *Dyer*, 322 F.3d at 1193. Yet, allowing an individual to circumvent § 362(k)(1) and recover more than he or she can otherwise recover under that statute can hardly be considered a "necessary" exercise of § 105(a). As the Ninth Circuit has stated, "[I]t is not up to [the courts] to read other remedies into the carefully articulated set of rights and remedies set out in the Bankruptcy Code." *Walls*, 276 F.3d at 507. Here, the set of remedies has been articulated by § 362(k)(1), which has prohibited the recovery of certain attorney's fees.

It follows that § 105(a), if used in the way suggested by the Debtor, would be "exercised in contravention of the Code." *Law*, 134 S. Ct. at 1195. As a result, this court is not persuaded that § 105(a)'s civil contempt authority is available to an individual who seeks to recover the attorney's fees and costs that are expressly unavailable under § 362(k)(1) and *Sternberg*.

18

**Conclusion.**

Based on the foregoing, the court finds and concludes that Golub willfully violated the automatic stay and that the Debtor is entitled to recover his actual damages under § 362(k)(1). The Motion will be granted in part. The Debtor will be awarded his actual damages in the amount of $3,408.55, which represents $3,333.50 in attorney's fees and $75.05 in costs incurred prior to termination of the stay violation. The damages award shall be joint and several against respondents Mitchell S. Golub, Esq., and the Law Offices of Golub & Associates, PLC. The part of the Debtor's Motion requesting an award of additional fees as a contempt sanction under § 105(a) will be denied.

Dated: May  15 , 2014

_W. Richard Lee_
W. Richard Lee
United States Bankruptcy Judge

19

## Instructions to Clerk of Court
Service List - Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked ____, via the U.S. mail.

Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and __X__ Other Persons Specified Below:

Connie M. Parker, Esq.
Attorney at Law
5260 N. Palm Ave., Suite 201
Fresno, CA 93704

George A. Gonzalez, Esq.
Attorney at Law
12230 El Camino Real, Suite 210
San Diego, CA 92130

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721